UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

DEC 1 9 2014


CLERK

| | |
|---|---|
| DUSTIN SCHRANT,<br><br>              Plaintiff,<br><br>   vs.<br><br>GEORGE JOHN FLEVARES,<br><br>              Defendant. | 4:12-CV-04180-KES<br><br>ORDER DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING MOTION TO BIFURCATE TRIAL |

Plaintiff, Dustin Schrant, brought a negligence claim against defendant, George John Flevares, following an automobile accident in Yankton, South Dakota. Schrant seeks recovery for actual and punitive damages. Flevares has admitted negligence in causing the accident, but the parties dispute the damages issue. The parties have filed cross motions for partial summary judgment with respect to Schrant's punitive damages claim. Alternatively, Flevares has moved this court to bifurcate the issues of actual and punitive damages. Schrant resists the motion to bifurcate. For the following reasons, the court denies Flevares's motion for partial summary judgment, denies Schrant's motion for partial summary judgment, and denies Flevares's motion to bifurcate trial.

## BACKGROUND

The facts, as viewed in the light most favorable to Schrant, the nonmoving party on the partial summary judgment motion,[1] are as follows:

Schrant is a citizen of Nebraska, and Flevares is a citizen of South Dakota. On April 7, 2011, Schrant was a passenger in a vehicle driven by Cody Straub. Straub's vehicle was traveling northbound on U.S. Highway 81, near its intersection of 23rd Street in Yankton, South Dakota. An accident occurred around 5:42 p.m., when Flevares's vehicle collided with the vehicle driven by Straub. Flevares was traveling southbound on Highway 81 when he attempted to make a left hand turn in front of the other car. Docket 22-1 at 5.

Prior to the accident, Flevares was at the Yankton Elks Club where he met with friends and had several drinks. Docket 20 at ¶ 8. Flevares, who was 76 at the time of the accident, would frequent the Elks Club, the local Moose Lodge and the VFW. He enjoyed going to the Elks Club on Thursdays, however, because the bartender there is the son of a friend of his. Docket 14-4 at 9. On the day of the accident, which occurred on a Thursday, the Elks Club opened at 4 p.m.

During days when the Flevares went to the Elks Club for drinks, he would drive himself to the lodge. Additionally, Flevares would drive himself home afterwards when he "felt in control." *Id.* at 10. Approximately an hour and a half after the accident, Flevares's blood alcohol content (BAC) was determined to be .133 percent. An estimate prepared by a forensic chemist computed Flevares's

---

[1] Plaintiff also moves for partial summary judgment on this issue. Docket 19.

BAC at the time of the accident to be between .141 percent and .156 percent. Docket 14-2.

On October 18, 2012, Schrant filed a complaint alleging negligence and seeking actual and punitive damages. Docket 1. Flevares admitted that he acted negligently in the operation of his vehicle, which caused the accident. Docket 5. The parties dispute the extent of the damages Schrant suffered and dispute whether punitive damages are appropriate in this case. Flevares alternatively requests that, should the court find the issue of punitive damages appropriate to submit to a jury, then the court should bifurcate the issues of actual and punitive damages. Docket 17.

## LEGAL STANDARD

Summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must present admissible evidence showing there is no dispute of material fact or that the nonmoving party has not presented admissible evidence to support an element of the case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, "[t]he nonmoving party may not 'rest upon mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995)).

3

Summary judgment is not appropriate if there is a dispute about a material fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

Federal jurisdiction in this action is predicated on diversity of citizenship. Therefore, the substantive law of South Dakota governs this case. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) ("We apply South Dakota substantive law because this diversity action was brought in the District of South Dakota, and the district court sitting in diversity applies the substantive law of the state in which it is located.").

## I.  PUNITIVE DAMAGES

In South Dakota, punitive damages are generally not recoverable unless expressly authorized by statute. SDCL 21-1-4. Relevant South Dakota law provides:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

SDCL 21-3-2. Consequently, in tort cases where oppression, fraud, or malice is shown, the decision to ultimately award punitive damages belongs to the jury. *Kjerstad v. Ravellette Pubs., Inc.*, 517 N.W.2d 419, 425 (S.D. 1994).

4

In order to survive Flevares's motion for partial summary judgment, Schrant "must prove to the court by clear and convincing evidence that a reasonable basis exists upon which a jury could award punitive damages." *Winterboer v. Edgewood Sioux Falls Senior Living, LLC*, No. 12-4049-KES, 2014 WL 28863, at *2 (D.S.D. Jan. 2, 2014) (citing *Dahl v. Sittner*, 474 N.W.2d 897, 902 (S.D. 1991)); *see also* SDCL 21-1-4.1. This burden is met if a plaintiff can show that there is "a 'reasonable basis' to believe punitive damages are warranted. In other words, the [plaintiff] must prove a 'prima facie case' for punitive damages." *Kjerstad*, 517 N.W.2d at 425 (internal citations omitted); *see also Isaac v. State Farm Mut. Auto. Ins. Co.*, 552 N.W.2d 752, 761 (S.D. 1994) (explaining this is a "preliminary, lower-order quantum of proof than must be established at trial.") (quoting *Case v. Murdock*, 488 N.W.2d 885, 891 (S.D. 1992)).

While SDCL 21-3-2 limits its applicability to tort cases involving oppression, fraud, or malice, the South Dakota Supreme Court has further instructed that "[m]alice is an essential element of a claim for punitive damages[.]" *Dahl*, 474 N.W.2d at 900; *see also Selle v. Tozser*, 786 N.W.2d 748, 757 (S.D. 2010); *Bertelsen v. Allstate Ins. Co.*, 833 N.W.2d 545, 555 (S.D. 2013). Malice can be actual or presumed. *Dahl*, 474 N.W.2d at 901.

> Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts.

*Id.* at 900 (internal citations omitted). A plaintiff can meet its burden by showing either type of malice. *Selle*, 786 N.W.2d at 757.

5

Here, Schrant relies upon a presumed malice theory. In cases where a plaintiff seeks punitive damages following an accident with an intoxicated driver, the South Dakota Supreme Court has observed that "intoxication, by itself, does not establish the malice necessary to impose punitive damages." *Berry v. Risdall*, 576 N.W.2d 1, 9 (S.D. 1998) (citing *Flockhart v. Wyant*, 467 N.W.2d 473, 478 n.7 (S.D. 1991)). Rather, presumed malice "implies that the act complained of was conceived in the spirit of mischief or criminal indifference to civil obligations." *Dahl*, 474 N.W.2d at 900 (quoting *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). Thus, while an " 'injurious act is not sufficient to constitute presumed malice,' " malice may "be shown by demonstrating a disregard for the rights of others." *Bertelsen*, 833 N.W.2d at 555-56 (citing *Selle*, 786 N.W.2d at 757)). Similarly, presumed malice "may nevertheless be imputed if the person acts willfully or wantonly to the injury of the other." *Isaac*, 522 N.W.2d at 761. With respect to the willful and wanton operation of a vehicle, the South Dakota Supreme Court has said that:

> [it] means something more than negligence. . . . There must be facts that would show that defendant intentionally did something in the operation of the motor vehicle which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to plaintiff.

*Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984). Whether conduct is willful or wanton is determined by an objective standard. *Id.* (citing *Brewer v. Mattern*, 182 N.W.2d 327 (S.D. 1970); *Chernotik v. Schrank*, 79 N.W.2d 4 (S.D. 1956)).

6

Because the South Dakota Supreme Court has determined that intoxication alone cannot serve as a basis for awarding punitive damages, it has considered other factors which shed light on the defendant's conduct. In *Flockhart*, 467 N.W.2d at 474, the South Dakota Supreme Court reviewed the imposition of punitive damages against an intoxicated driver who caused a collision on Interstate 90. The defendant had been drinking the night before as well as the day of the accident. She consumed two to three beers before leaving Wall, South Dakota, on a trip to Rapid City. *Id.* Additionally, she drank more beer during the 50-mile drive to Rapid City, and during a stop at a bar in New Underwood, a town roughly 35 miles west of Rapid City. *Id.* The defendant eventually lost control of her vehicle on the interstate, went through the median, and struck the plaintiff's car. *Id.* When the accident occurred, she had alcohol with her in the car. *Id.* Her BAC was determined to be .30 percent. *Id.*

The defendant had five previous alcohol-related offenses dating back to 1972. *Id.* She had been through numerous alcohol treatment programs and had seen movies, attended classes, and listened to lectures pertaining to the hazards of drinking and driving. *Id.* Despite the correctional programs, DUI citations, and legal fines, she testified that they "had not kept her from drinking, nor had they kept her from driving while she had been drinking." *Id.* Considering the amalgamation of these factors, the court affirmed the punitive damages award after concluding the defendant "must have known, with substantial certainty, the danger which her conduct engendered." *Id.* at 478.

In *Berry*, 576 N.W.2d at 2, the South Dakota Supreme Court analyzed a situation where the trial court allowed the issue of punitive damages to go to a jury

7

following a collision between an intoxicated driver and a limousine. In *Berry*, the plaintiff's limousine pulled out in front of the defendant at an intersection. A fact question existed as to whether the defendant had been able to avoid the accident. *Id.* at 3 n.1. The defendant had a BAC two hours after the accident of .122 percent. *Id.* Expert evidence placed the defendant's BAC at approximately .15 percent at the time of the accident. *Id.* at 10.

The collision occurred at approximately 8 p.m., and evidence showed that the defendant was traveling between 35 and 50 miles per hour in a 35 mile per hour zone. *Id.* at 2-3. The defendant admitted he had a "habit" of visiting a bar after work with co-workers, where he would consume approximately four drinks before driving himself home. *Id.* at 9. During the night of the accident, the defendant consumed between four and nine drinks in a span of fewer than two hours before driving home through potentially high traffic areas. *Id.* at 9-10. The defendant had previously been convicted of DUI and was required to attend Alcoholics Anonymous meetings for a year and to complete an eight-hour driving course. *Id.* at 10. In light of these factors, the South Dakota Supreme Court agreed with the trial court that there was sufficient evidence to submit the issue of punitive damages to the jury. *Id.*

In *Tranby*, 348 N.W.2d at 461, the South Dakota Supreme Court analyzed whether a motorist's behavior amounted to willful and wanton misconduct following an accident involving a single car. The plaintiff, a passenger, sued the defendant, the driver, under South Dakota's now-repealed guest statute which, *inter alia*, predicated liability upon a showing that the driver acted willfully and wantonly. The accident occurred at night while the defendant was driving along a

8

gravel road. *Id.* at 460. The defendant and plaintiff had both consumed alcohol. The court found that defendant consumed seven drinks between the hours of 6:30 p.m. and 10:45 to 11 p.m., which is when the crash occurred. *Id.* The defendant had been driving five to ten miles per hour in excess of the posted speed limit despite the plaintiff's request to slow down. *Id.* at 461. The court concluded that this evidence was insufficient to constitute willful and wanton misconduct. *Id.* at 461-62 (noting "there is no evidence from which a jury could find that defendant's conduct was of such a nature that in all probability, as distinguished from possibility, an accident would occur.").

These cases outline a spectrum of conduct involving intoxicated motorists varying in degrees of reprehensibility, by which Flevares's conduct in the present case may be compared. Flevares primarily asserts that his actions fall far short of those described in *Flockhart*, which appears to be the worst of the three. Docket 16 at 7-8. Schrant asserts that Flevares's conduct is at least as onerous as the defendant's in *Berry*, Docket 27 at 1-3, which the South Dakota Supreme Court described as "not overall as egregious as . . . *Flockhart*[.]" *Berry*, 576 N.W.2d at 10. Of these cases, only in *Tranby* did the court conclude that the defendant did not demonstrate "an affirmative, reckless state of mind or deliberate recklessness[.]" *Tranby*, 348 N.W.2d at 461.

Viewing the facts and their inferences most favorably to Schrant, the evidence shows that Flevares indulged in a habit of visiting the Elks Club for drinks with friends on Thursdays. Docket 14-4 at 9. His routine is comparable to that described in *Berry*, where the defendant had a habit of visiting a bar after work. *Berry*, 576 N.W.2d at 9. Additionally, Flevares would sometimes drive

9

himself home after having several drinks, like the *Berry* defendant. Docket 14-4 at 10; *see also Berry*, 576 N.W.2d at 9. Between the opening of the Elks Club at 4 p.m. and the accident at 5:42 p.m., Flevares had consumed enough alcohol to raise his BAC as high as .156 percent. Docket 14-2. The defendant in *Berry* had a similar .15 percent BAC at the time of the accident in that case, and the court noted that he drank enough "in less than two hours before leaving [the bar]" in order to reach such a level. *Berry*, 576 N.W.2d at 9-10. Further, Flevares's chosen route home took him along Highway 81, a road in Yankton with a relatively high amount of traffic for the area, especially at the time of the accident when people would be returning home from work. Docket 21. Although Yankton's population is several times smaller than that of Rapid City, the *Berry* court gave some weight in its analysis to the defendant's decision to drive through heavy traffic areas. *Berry*, 576 N.W.2d at 9. Thus, as Schrant contends, there are a number of similarities between the present case and *Berry*.

On the other hand, the present case has several distinguishing facts as compared to *Flockhart* and B*erry*. The *Flockhart* defendant had a systemic history of alcohol-related entanglement with the legal system and was required to view movies, classes, and lectures about the hazards of drinking and driving. *Flockhart*, 467 N.W.2d at 474. Despite the many fines paid and programs she attended, they "had not kept her from drinking, nor had they kept her from driving while she had been drinking." *Id*. The defendant in *Berry* had been convicted of DUI[2] in 1984 and

---

[2] The *Berry* defendant was convicted of DUI in 1991, which led to the corrective programs mentioned by the court. *Berry*, 576 N.W.2d at 10. The court also noted, however, that he pleaded guilty to an earlier DUI in 1984, but the plea resulted in suspended imposition. *Id*. at n.7. This information, and the programs

1991, and had been ordered to attend Alcoholics Anonymous meetings and complete an eight-hour driving course. *Berry*, 576 N.W.2d at 10. Thus, the South Dakota Supreme Court described the *Berry* defendant as "a problem drinker who has been amply educated and warned as to the dangers of drinking and driving and has made a conscious choice to continue to do so anyway." *Id.* In the present case, Flevares has no prior history of alcohol related offenses, his license has not been suspended, and he has not been ordered by a court to attend corrective programs. Flevares acknowledged, however, that he was aware motorists should not drink and drive. Docket 14-4 at 6.

Additionally, unlike the defendants in *Berry* or *Tranby*, Flevares was not driving at night when visibility was diminished, nor was he driving on a gravel road as in *Tranby*. And, unlike in *Berry*, there is no evidence that Flevares was speeding. According to the accident report, Flevares was traveling 17 miles per hour in a 30 mile per hour zone. Docket 22-1. Further, unlike in *Flockhart*, Flevares was not drinking while he was driving.

Based on the foregoing, Flevares was admittedly negligent by operating his vehicle while under the influence of alcohol on the day of the accident. Additionally, Flevares has an ongoing, admitted problem with drinking and driving. Although Flevares does not have the same history of flaunting prior legal reprimands or corrective programs as the defendants in *Berry* or *Flockhart*, Flevares's admitted history of drinking and driving, as well as his understanding that his conduct was illegal, demonstrates a "criminal indifference to civil

---

that resulted from the two sentences, was relied upon by the trial court for purposes of determining whether the issue of punitive damages would be submitted to the jury. *Id.*

obligations." *Dahl*, 474 N.W.2d at 900 (quoting *Hannahs*, 158 N.W.2d at 682). That Flevares has not been caught before does not make his course of conduct more acceptable or change the fact that each time Flevares chose to get behind the wheel after consuming alcohol, he put himself and other drivers in danger. His continued choice to play the same gamble demonstrates "a disregard for the rights of other[]" motorists. *See Bertelsen*, 833 N.W.2d at 555-56 (citing *Selle*, 786 N.W.2d at 757)).

By concluding that a motorist's intoxication cannot, by itself, establish the malice necessary to warrant punitive damages following a collision, the South Dakota Supreme Court has resisted imposing punitive damages against intoxicated drivers as a matter of course. Flevares's conduct here, however, was not simply the unfortunate result of a bad decision reached at the end of a single evening. Rather, his choice to regularly drink and drive in spite of the dangers it posed "transcends negligence . . . [and] demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the defendant." *Tranby*, 348 N.W.2d at 461. This, along with the other similarities to the *Berry* decision, is sufficient to allow the question of punitive damages to go to the jury. Therefore, the court concludes Schrant has shown by clear and convincing evidence that a reasonable basis exists upon which a jury could find that Flevares acted with presumed malice. Consequently, Flevares's motion for partial summary judgment is denied.

## II.   SCHRANT'S MOTION

Schrant moves for partial summary judgment with respect to the punitive damages issue seeking to have the issue presented to the jury. Docket 23 at 3

(arguing "there is sufficient justification to present evidence of Defendant's willful and wanton conduct to the jury for consideration of punitive damages."). Docket 19. Flevares argues that Schrant cannot establish a right to punitive damages by virtue of a summary judgment motion, as the decision to award punitive damages ultimately belongs to the jury. Docket 28 at 2-3. A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Schrant admits the issue of punitive damages is a fact question that should be submitted to the jury, he is not entitled to summary judgment.

### III.     BIFURCATION

Fed. R. Civ. P. 42(b) establishes the criteria the district court should consider with respect to a motion to bifurcate a trial. It provides in part, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims[.]" *Id.* Thus, when presented with a motion to bifurcate, the court should consider factors such as clarity, judicial economy, and avoiding confusion. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1202 (8th Cir. 1990); *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1042 (8th Cir. 1983). The factor that controls the decision to bifurcate "is the interest of efficient judicial administration" instead of "the wishes of the parties." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2008). "The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." *Id.* Moreover, district courts possess broad discretion to grant or deny a motion to bifurcate

13

under Rule 42(b). *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213-14 (8th Cir. 1999) ("The decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court."); *see also Athey* v. *Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000); *E.E.O.C. v. HBE Corp*, 135 F.3d 543, 551 (8th Cir. 1998).

Flevares moves to bifurcate the issues of actual and punitive damages. Docket 17. Flevares asserts that because he has admitted negligence, any evidence of his alcohol consumption prior to the accident or his intoxication would be irrelevant to the issue of what Schrant's actual damages are as a result of the collision. Docket 18 at 2. Rather, he claims, the evidence would only be relevant to the punitive damages issue. *Id.* Thus, because Fed. R. Evid. 402 provides that irrelevant evidence is not admissible, bifurcation is warranted. *Id.* Alternatively, assuming his intoxication was relevant to determine Schrant's actual damages, Flevares contends that reference to his intoxication would nonetheless be unfairly prejudicial. *Id.* Therefore, because Rule 403 allows this court to exclude relevant evidence whose probative value is substantially outweighed by unfair prejudice, the actual and punitive damages issues should be bifurcated. *Id.*

Schrant responds, although without addressing Flevares's relevance concern, that all of the evidence he intends to introduce at trial would be inherently prejudicial to Flevares. Docket 26 at 2. Nonetheless, Schrant argues exclusion of relevant yet prejudicial evidence is only appropriate when the prejudicial effect is unfair and when it substantially outweighs the evidence's probative value. *Id.* (citing 3 M. Graham, *Handbook of Federal Evidence*, 716 n. 3 (7th ed. 2012)). Schrant further cites *Kociemba v. G.D. Searle & Co.*, 683 F. Supp.

1577, 1579 (D. Minn. 1988), a case involving a defendant's motion to bifurcate the issues of punitive and actual damages. The motion was referred to a Special Master, who recommended the motion be denied. The court agreed with the Special Master that bifurcating the two proceedings would be burdensome and time consuming. *Id.* Further, the court found "cautionary instructions regarding limited admissibility of evidence will ensure that defendant receives a fair trial." *Id.*

Additionally, Schrant argues that bifurcation would result in inconvenience. Docket 26 at 1. This is so because at least one witness would be forced to make multiple trips between Yankton and Sioux Falls if two trials become necessary. *Id.* at 1-2. Likewise, the jury and court would be burdened. Schrant argues judicial economy would be sacrificed for similar reasons. *Id.* at 3.

With respect to Flevares's concern that evidence of his intoxication would either be irrelevant or unfairly prejudicial to the actual damage issue, Fed. R. Evid. 105 allows this court to issue a limiting instruction, on timely motion, if the court admits evidence that is admissible for one purpose but not for another purpose. *Cf. Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 933 F. Supp. 2d. 1111, 1138 (N.D. Iowa 2013) (explaining the availability of a limiting instruction on a potential punitive damages issue "will mitigate the potential prejudice, if there is any, from such evidence.") (citing *United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011)). There is a presumption that juries not only carefully evaluate the evidence presented to them, but they can and do follow the instructions given to them. *Bjornestad v. Progressive Northern Ins. Co.*, No. Civ-08–4105, 2009 WL 2588286, *4 (D.S.D. Aug. 20, 2009) (citing *United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir.1996)). There is no reason before the court that suggests the jury

would be unable to follow the court's instructions in the present case. For this reason, and in consideration of convenience and judicial economy, Flevares's motion to bifurcate the trial is denied.

## CONCLUSION

Punitive damages may be awarded in South Dakota when a defendant must have known, with substantial certainty, the danger that his or her tortious conduct engendered. Schrant has submitted evidence that shows by clear and convincing evidence that a reasonable basis exists upon which a jury could find that Flevares acted with presumed malice. Therefore, the question of whether punitive damages will ultimately be imposed may be presented to the jury. Additionally, bifurcation is inappropriate in this case considering the availability of limiting instructions, judicial economy and convenience. Accordingly, it is

ORDERED that Flevares's motion for partial summary judgment (Docket 13) is denied.

IT IS FURTHER ORDERED that Schrant's motion for partial summary judgment (Docket 19) is denied.

IT IS FURTHER ORDERED that Flevares's motion to bifurcate the issues of damages (Docket 17) is denied.

Dated December 19, 2014.

BY THE COURT:

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

16